**Donald DAVIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–84–00345–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 27, 1984.

William W. Vance, Vance, Bruchez & Goss, Bryan, for appellant.

Bill Turner, Brazos County Dist. Atty., Rodney Boyles, Brazos County Asst. Dist. Atty., Bryan, for appellee.

Before EVANS, C.J., and DUGGAN and JACK SMITH, JJ.

## OPINION

DUGGAN, Justice.

After finding appellant guilty of burglary of a habitation, the jury made an affirmative finding at the punishment hearing that he exhibited a deadly weapon during the commission of the offense, and assessed his punishment at thirty-five years confinement. Appellant urges six grounds of error.

Appellant first contends that the trial court erred in overruling his motion to dismiss the indictment for violation of the Speedy Trial Act.

When appellant's pro se speedy trial motion was heard on March 2, 1984, appellant testified that he was arrested on September 6, 1983, and incarcerated from that time until the date of the hearing. The trial court took judicial notice of the facts that (1) more than 120 days had elapsed from the date of arrest and incarceration until the date of the hearing, and (2) the state's announcement of ready was signed and filed October 25, 1983. The fact of the filing was also entered on the docket sheet. Appellant's request for dismissal was denied.

Texas Code Crim.P. art. 32A.02 (Vernon Supp.1984) (the Texas Speedy Trial Act) addresses prosecutorial delay rather than delay resulting from the judicial process, *Barfield v. State*, 586 S.W.2d 538, 541 (Tex.Crim.App.1979), and an announcement of ready by the state within the 120 day time period applicable for felonies constitutes a prima facie showing that the state was ready. *Ostoja v. State*, 631 S.W.2d 165, 167 (Tex.Crim.App.1982). This prima facie declaration of readiness can be rebutted by evidence showing that the state was not ready for trial during the Act's time limits. *Barfield* at 542. The state presented evidence of its announcement of ready at the motion hearing, and appellant offered no evidence in rebuttal. The requirements of the Speedy Trial Act were met, and appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in overruling his four objections to improper prosecutorial jury argument at the punishment phase of the trial.

The trial court sustained appellant's first objection to the following state's argument:

One of those aspects is that it was a very well conceived crime. You heard from the witnesses that this was a particular time in the day, in a very nice neighborhood of this town, very exclusive neighborhood, where people were gone out of their homes, where there were housewives and children in many of the homes. And those people were gone between 8:00 and 8:30 everyday. This gave the Defendant time to go into a home and get out in virtually minutes.

MR. VANCE: Your Honor, I am going to object at this time to the argument. There has been no testimony to any conceived plan or there's been no testimony as to what type of neighborhood, and I would object.

Appellant's motion to instruct the jury to disregard these comments by the prosecutor was granted, but his motion for mistrial was denied. The prosecutor's argument continued as follows:

I don't think it's an accident. I don't think the evidence shows it was an accident.

MR. VANCE: Your Honor, I object to that. There's no evidence as to—he's, again, alluding to a preconceived plan by arguing it wasn't an accident. That was the same objection that I objected to, as

to him arguing outside of the record. He's just paraphrasing it in another way.

This objection was also sustained by the court, but appellant's counsel made no motion to instruct the jury to disregard.

The prosecutor continued his argument as follows:

An [sic] in today, in the 1980's, I think we have come to a point in time where the prisoners in society tend to be the citizens of society.

MR. VANCE: Your Honor, I am going to object to that as an improper plea of law enforcement.

This objection was overruled.

■ Four general areas of acceptable jury argument are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and, (4) plea for law enforcement. *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim.App.1983). While the prosecuting attorney is permitted in argument to draw from the facts in evidence all reasonable, fair, and legitimate inferences, he may not use jury argument to get before the jury, either directly or indirectly, evidence which is outside the record. *Jordan v. State*, 646 S.W.2d 946, 948 (Tex.Crim.App.1983). However, unless argument outside the record is extreme, manifestly improper, or injects new harmful facts, it does not constitute reversible error. This rule is applied by looking to the facts of each case and viewing the probable effect on the minds of the jurors. *Thomas v. State*, 621 S.W.2d 158, 164 (Tex.Crim.App.1981). If the prosecutor does argue outside the record and injects personal opinion, any error is cured when the trial court sustains appellant's objection and instructs the jury to disregard the statements, *Boyd v. State*, 643 S.W.2d 700, 707 (Tex.Crim.App.1983), unless it appears that the argument is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on the juror's minds. *Rodriguez v. State*, 646 S.W.2d 539, 542 (Tex.App.—Houston [1st Dist.] 1982, no pet).

■ Appellant's objection to the first instance of alleged improper argument was sustained and his motion to instruct the jury to disregard the prosecutor's remarks was granted. From a review of the record, we conclude that these remarks were not of such a nature as to be clearly calculated to inflame the minds of the jurors, and any error was cured by the court's instruction. An eyewitness testified that she saw appellant walk along the street in front of the burglarized house and then go up its driveway; that the neighborhood was one of single family houses with children; that the time was about 8:10 or 8:20 a.m.; that it is usual or customary for parents to be taking their children to school at this time daily; that she had just seen Mrs. Perkins leave the house to take her children to school; and that Mr. Perkins usually left at 7:30 a.m.

■ As to the second instance of improper jury argument, appellant's objection was sustained, and no motion was made to instruct the jury to disregard, nor did appellant request a mistrial. Appellant obtained all the relief he sought, and no error is preserved. *Boyd v. State*, 643 S.W.2d at 707.

The third objection to the prosecutor's argument was that it was an improper plea for law enforcement. The remarks in question can be seen as reasonable inferences from the evidence adduced and summarized above, and were thus a proper plea for law enforcement during punishment stage argument. *Denison v. State*, 651 S.W.2d at 763.

The final complaint of improper jury argument was as follows:

And you know he took a calculated risk, one that he measured in his own mind, one that he decided, just as you decided to go to work everyday—

MR. VANCE: Your Honor, I am going to object at this time as being a comment on the Defendant's failure to testify ... on what his attitudes were, as to what he thought.

**206**

This objection was also overruled by the trial court.

It is improper for a prosecutor to comment upon a defendant's failure to testify, Tex.Code Crim.P. art. 38.08 (Vernon 1966), but for such comment to be error, it must be a direct allusion to the accused's failure to testify. *Hawkins v. State*, 660 S.W.2d 65, 79 (Tex.Crim.App. 1983). The prosecutor's argument was neither a direct allusion to the accused's failure to testify nor of such character that the jury would naturally and necessarily take it to be a comment on his failure to testify. *Owen v. State*, 656 S.W.2d 458, 459 (Tex. Crim.App.1983). Eye witness testimony supplied the facts as to appellant's actions just prior to the burglary, and the argument did not call the jury's attention to the absence of evidence that only the defendant's testimony could supply. *Banks v. State*, 643 S.W.2d 129, 134 (Tex.Crim.App. 1982), *cert. denied*, — U.S. —, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983). Appellant's second ground of error is overruled.

Appellant's third ground of error alleges that his due process and equal protection of the law rights were violated by the prosecutor's actions in peremptorily challenging all black members of the jury panel.

On appellant's motion, the trial court took judicial notice of the facts that (1) the state peremptorily struck all prospective jurors who were black; (2) all twelve jurors chosen in the case were white; and, (3) the appellant is black. Appellant's motion to dismiss the jury panel chosen because of the state's systematic exclusion of all blacks from the jury was denied. No other evidence was presented by appellant to support this motion.

The use of peremptory challenges to strike qualified blacks is not a prohibited systematic exclusion of blacks in petit jury selection. *Evans v. State*, 622 S.W.2d 866, 869 (Tex.Crim.App.1981). The burden is on the appellant to show that there has been a systematic use by the state of peremptory challenges against blacks over a period of time, and not just in the instant case. *Swain v. Alabama*, 380

U.S. 202, 227, 85 S.Ct. 824, 839, 13 L.Ed.2d 759 (1965). Since appellant presented no evidence to meet this burden, his motion to dismiss the jury panel was properly denied, and his third ground of error is overruled.

Appellant's fourth and sixth grounds of error concern two facets of one procedural event of the trial, and we therefore consider them together.

At the punishment phase of trial, the court submitted to the jury the issue of whether appellant used or exhibited a deadly weapon during the commission of the offense, and the jury answered affirmatively. The indictment alleged a prior felony conviction for enhancement purposes, but did not allege the use or exhibition of a deadly weapon, either in connection with the commission of the primary offense or as a separate paragraph similar to the enhancement allegation.

Appellant complains in his fourth ground of error that the indictment is fundamentally defective for failing to notify him of the use or exhibition of a deadly weapon. His sixth ground of error asserts that the court erred in charging the jury at the punishment phase to find whether a deadly weapon was used or exhibited during the commission of the offense.

Appellant concedes that the indictment, as worded, correctly charges the primary offense of burglary of a habitation. He contends, however, that since he faces punitive consequences from an affirmative finding that he used or exhibited a deadly weapon, *i.e.*, the lengthening of his confinement under any sentence imposed by the restriction of his ability to obtain good time credit, the state should be required to include such language in the indictment. He urges that harm has been shown and that his "rights under due process" have been denied by the court's failure to require the state to include "use or exhibition of a deadly weapon" in the indictment. He concedes that he has no case authority on point. He suggests that the situation is analogous to the requirement elsewhere that, if statutory language is not complete-

ly descriptive of the offense charged, and greater particularly is required, a mere tracking of the statute is insufficient, citing *Haecker v. State*, 571 S.W.2d 920 (Tex. Crim.App.1978). We reject the analogy since use or exhibition of a weapon is not one among several descriptive manners or means of commission of the primary offense.

Appellant objected, during preparation of the punishment charge, to the inclusion of the inquiry concerning his use or exhibition of a deadly weapon, because it was not set out in the indictment. He further urges that since the inquiry concerned the circumstances of the case in chief, it should have been submitted at the guilt or innocence phase of trial, if at all.

Only in Tex.Code Crim.P. art. 42.12 (Vernon Supp.1984) do we find mention of an affirmative finding as to the use or exhibition of a deadly weapon during the commission of an offense or during immediate flight therefrom. Because this section deals with the alternatives available to a jury or a court in imposing, suspending, or probating a sentence after conviction, it is appropriate that an inquiry affecting punishment alternatives be determined at this phase of trial.

Article 42.12 does not state when, during the bifurcated criminal trial, a jury is to be charged to find whether a weapon was used or exhibited during the commission of an offense. Section 3f of art. 42.12, states in pertinent part as follows:

(a) The provisions of Sections 3 and 3c of this Article [listing situations in which a judge may grant probation] do not apply:

(1) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

(A) Section 19.03 (Capital murder);

(B) Section 20.04 (Aggravated kidnapping);

(C) Section 22.021 (Aggravated sexual assault);

(D) Section 29.03 (Aggravated robbery); or

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in section 1.07(a)(11), during the commission of a felony offense or during immediate flight therefrom.... *Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment.* (Emphasis added).

Sections 3, 3a, and 3f of art. 42.12, when read together, suggest that the inquiry is a proper one for the punishment phase of the trial, not for the guilt or innocence phase.

*Barecky v. State,* 639 S.W.2d 943 (Tex. Crim.App.1982), cited by appellant, is not in point. There, as in our case, the indictment did not contain an allegation of the use or exhibition of a deadly weapon. After the jury found Barecky guilty, and assessed his punishment, the *court* made an affirmative finding that he had used a deadly weapon. The Court of Criminal Appeals reversed, holding the trial court's action to be improper "in the absence of such an 'affirmative finding' by the appropriate trier of fact." *Id.* at 945. *Barecky* does not state at which stage of trial the affirmative finding by the trier of fact must be made.

Neither was the issue decided in *Ex parte Moser,* 602 S.W.2d 530 (Tex.Crim. App.1980), where the defendant was indicted for intentionally and knowingly causing the death of a named individual by "shooting him with a pistol." There, the jury found the defendant guilty of murder "as charged in the indictment," assessed punishment at ten years' confinement, but recommended that the defendant be placed on probation. The trial court stated in its judgment as follows:

The jury verdict in this case being an affirmative finding that the defendant ... used a firearm during the commission of the offense ... and the defendant having been granted probation, the Court accordingly, under the provisions of Art. 42.12f(b) ..., orders that the Defendant be confined in the Texas Department of Corrections....

*Id.* at 532.

The court held that, in light of the allegations in the indictment, the jury verdict

necessarily included a finding that a deadly weapon was used during the commission of the offense and that there was no need for the issue to be presented to the jury.

> We should not be understood to hold that this method was the only, or even the better, way to make such a finding. Different indictments, instructions, or forms of verdict obviously might make such a method inadequate to comply with the statute....

*Id.* at 533.

■ Appellant has shown no authority to support his contention that the trial court erred in charging the jury to make the finding at the punishment phase of trial. Neither has he shown how he was harmed by the court's requiring the jury finding to be made at the final phase. The affirmative finding was a punishment/sentencing concern, and was not a part of the state's proof of the primary offense. Deferring the inquiry until the punishment phase not only avoided any suggestion to the jury as to the gravity of the "use or exhibition" factor in determining guilt or innocence but also averted any inferential comment on the weight of the evidence that might encourage a finding of guilt. Without a showing of harm, the error, if any, is harmless. The issue was properly determined by the jury which was the trier of fact. *Ex parte Thomas*, 638 S.W.2d 905 (Tex.Crim.App.1982). *Cf. Pena v. State*, 630 S.W.2d 686 (Tex.App.—Houston [1st Dist.] 1981, *rev'd on other grounds*, 640 S.W.2d 295 (Tex.Crim.App.1982). Appellant's fourth and sixth grounds of error are overruled.

Appellant's fifth ground of error contends that the trial court erred in allowing evidence of a prior conviction during the punishment phase of the trial.

Appellant's motion to quash the enhancement paragraph of the indictment alleged that:

> (1) the conviction upon which the State relies for enhancement (Cause No. 12,-962) is void because the trial court violated the provisions of art. 42.12, sec. 3(4), Tex.Code Crim.P., in that the original

sentencing judge was not the same judge who later probated the sentence; and, (2) there exists a variance in the indictment, the plea of guilty, and the order revoking probation as to when the conviction in Cause No. 12,962 became final.

The prior conviction alleged in the indictment, and upon which the state relied for enhancement purposes, was in Cause Number 12,962, where the judgment was signed by the Honorable John L. Placke as presiding judge of the 272nd District Court of Brazos County, Texas. Both the sentence form signed by Judge Placke on November 24, 1980, and the guilty plea form signed earlier by the appellant on November 13, 1980, reflected that appellant was convicted in that cause on November 13, 1980. Likewise, the order granting shock probation after sentence and the later order revoking probation, both signed by Honorable J. Bradley Smith as presiding judge, also reflect that appellant was convicted on November 13, 1980.

■ Section 5 of art. 42.12, of the Code of Criminal Procedure was amended, effective September 1, 1981, to add sec. 5(a), which provides in pertinent part that "[o]nly the judge who originally sentenced the defendant may suspend execution thereof and place the defendant under probation...." At the time appellant was granted shock probation, sec. 5 did not include this limiting language. Rather, sec. 3e(a) of art. 42.12, then applicable, stated that "the judge *of the court* that imposed such sentence may, ... suspend further execution of the sentence imposed and place the defendant on probation...." (Emphasis added). We reject appellant's argument that only the judge who originally sentenced him could grant him shock probation. The limitation was created only by the 1981 amendment, and before its effective date any judge presiding in the sentencing court, whether sitting by assignment or otherwise, could grant shock probation to a defendant sentenced by that court. This portion of appellant's fifth ground of error is without merit.

■ However, the court lacked jurisdiction to grant appellant shock probation at the time it entered its order doing so. As then in effect, art. 42.12, sec. 3e(a) continued the jurisdiction of a court in which a sentence was imposed requiring confinement in the Texas Department of Correction "for 120 days from the date the execution of the sentence actually begins."

Appellant was sentenced on November 13, 1980, and was delivered to the Department of Corrections on December 4, 1980. The purported grant of shock probation on April 6, 1981, more than 120 days after execution of appellant's sentence actually began, was done at a time when the court was without jurisdiction to do so. *Adams v. State*, 610 S.W.2d 780, 781 (Tex.Crim. App.1981).

■ Appellant argues that since the second judge was without authority to grant him shock probation, the conviction was void and should not have been allowed before the jury for impeachment or any other purpose. He cites no authority to support this proposition. Appellant's conviction is not void; only the purported grant of shock probation is void for failure to comply with the time limits.

Appellant is in effect attempting a collateral attack on the judgment of conviction on the grounds that since he was erroneously granted shock probation, the conviction was therefore not final. If the court had validly granted him shock probation, the conviction would not be a final one. If appellant had been on valid shock probation which was thereafter revoked, the date of the revocation would be the date of the final conviction.

The record does not show that an appeal was pending when appellant was erroneously granted shock probation. Accordingly, the date of final conviction is November 13, 1980, the date sentence actually began, and not December 17, 1982, the date of signing of the order revoking the unauthorized shock probation.

Appellant further contends that the court erred in allowing evidence of this prior conviction because there was a variance between the allegations of the enhancement paragraph and appellant's plea of guilty as to the date of final conviction in the cause alleged.

The enhancement portion of the indictment states, in pertinent part, that "on the 24th day of November, 1980, ... in Cause Number 12,962, [appellant] was convicted of a felony, ... and said conviction became final prior to the commission of the aforesaid [primary] offense...." The record shows that in Cause Number 12,962 the written plea bargaining agreement, the jury waiver, the stipulation of evidence, the judicial confession, and waiver of time for sentencing and right to appeal were all signed by appellant on November 13, 1980. While the judgment signed on November 24, 1980 does not reflect the date of conviction, the sentence form signed the same day states that the verdict and judgment were "rendered and entered against" appellant on November 13, 1980.

The state concedes that there is a variance between the proof and the allegation of the date of final conviction in the indictment's enhancement paragraph. Our concern is whether this is a fatal variance.

■ Allegations of prior convictions used for enhancement should include (1) the court in which the conviction was obtained; (2) the time of the conviction; and, (3) the nature of the offense. *Jackson v. State*, 633 S.W.2d 897, 898 (Tex.Crim.App. 1982). However, a prior conviction for enhancement need not be alleged with the same particularity as must be used in charging the original offense. *Watson v. State*, 605 S.W.2d 877, 883 (Tex.Crim.App. 1980). The purpose of an enhancement allegation is to provide the accused with notice of the prior conviction relied upon by the state in order to avoid surprise. *Cole v. State*, 611 S.W.2d 79, 82 (Tex.Crim.App. 1981). To be material, a variance in allegation and proof must be such as to mislead the party to his prejudice. *Burton v. State*, 493 S.W.2d 837, 840 (Tex.Crim.App. 1973). The enhancement paragraph contained the correct cause number and court

number in which the alleged conviction for the prior offense occurred, as well as the correct name of the offense and description of it as a felony. The indictment's incorrect allegation of the date of final conviction for the prior offense would not have prevented the appellant from finding the record of it and presenting a defense. The variance was not fatal, and appellant's fifth ground of error is overruled.

The judgment is affirmed.